1DAVID S. GORBATY, Judge.
In this appeal, Louisiana Housing contends that the trial court erred in rescinding the sale of a mobile home bought by the plaintiffs, returning to them the purchase price, and awarding them an additional $29,333.50 in damages, plus legal interest, costs, and attorney’s fees. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY

On January 23, 1996, plaintiffs, Michael and Linda Garner (“the Garners”), and Travis Knight, on behalf of Rose Discount Mobile Homes, Inc., d/b/a Louisiana Housing (“Rose”), executed a Plain Language Purchase Agreement and an Installment Contract and Security Agreement for the sale of a 1996 Southern Dream double-wide mobile home for the purchase price of $61,953.00. Rose ordered the mobile home from the manufacturer, Southern Life/ Style Homes, Division of Southern Energy Homes, Inc. (“Southern Homes”).
Upon delivery to the designated site, Rose was responsible for installation of the two pre-fabricated halves. Installation included placing the two units in position, blocking, anchoring, lag bolting, foaming, installing a roof cap, and Ltrimming the inside and outside cosmetics. Pursuant to an agreement with Rose, Lloyd Cernich performed this work. After installation was completed, the Garners moved into the home. They soon began to notice various problems such as mildew, musty odors, dampness, and sagging and buckling walls, floors, cabinets, and countertops. The Garners immediately informed Rose and Southern Homes of the situation, who made numerous attempts to repair the home without success.
On February 20, 1997, the Garners filed suit against Rose and Southern Homes. Rose filed an answer on May 27, 1997. However, an answer was never filed on behalf of Southern Homes. As a result, the Garners filed a Motion for Preliminary Default on August 15, 1997. On September 10, 1997, the plaintiffs obtained a default judgment against Southern Homes awarding the Garners the return of the purchase price, incidental and general damages in the amount of $30,742.00, and attorney’s fees in the amount of $10,000.00.
On October 27, 1997, Southern Homes filed a Petition to Annul the September 10, 1997 Default Judgment. It also filed a Petition and Order for Appeal, which was granted by the trial court on November 13, 1997. Thereafter, all matters between the Garners and Southern Home were settled, and the Garners dismissed all claims against Southern Homes. Subsequently, *298 upon plaintiffs’ motion, the default judgment was set aside and rendered null by judgment dated August 19,1998.
On that same date, the State Fire Marshall rendered a report outlining deficiencies in the Garners’ home that required plaintiffs to obtain leave of court to amend their Petition. On September 21, 1998, Rose answered plaintiffs’ supplemental petition and filed a Third Party Demand against Lloyd Cernich.
13After a trial held on December 8-9, 1998, the trial court rescinded the sale. It entered judgment in favor of the Garners and against Rose in the amount of $141,892.55, the total sale price of the mobile home, including the cost of credit, cash down payment, taxes, and recordation fees, subject to a credit in favor of Rose for the pay-out of the unpaid principal and interest due and paid for the cancellation of the mortgage and security interest on the mobile home. The trial court also awarded the plaintiffs $14,333.50 for expenses associated with additions to the mobile home, insurance, and sewerage plant, and an additional $15,000.00 for inconvenience, mental suffering, and loss of enjoyment, together with legal interest, costs, and reasonable attorney’s fees. The claim against Cernich was dismissed. Rose subsequently filed this appeal.

DISCUSSION

In its first assignment of error, Rose argues that the trial court erred by not allowing Rose a credit for the damages awarded the plaintiffs in the previous default judgment entered against Southern Homes. Rose contends that the default judgment awarded the plaintiffs all of the damages available to them under either the redhibition articles or the New Home Warranty Act.
The default judgment rendered on September 10, 1997 was set aside by order of the court dated August 19, 1998. The judgment never reached finality; as a result of a compromise reached between the Garners and Southern Homes, it was declared null during the pendency as a properly perfected appeal. As such, the judgment has no force or legal effect. Absent a judgment assigning fault for the defective mobile home to a party other than Rose, Rose is not entitled to an offset or credit. This assignment of error is without merit.
|4In its second assignment of error, Rose argues that the trial court committed manifest error by applying the redhibition provisions of the Louisiana Civil Code against Rose, rather than applying the provisions of the New Home Warranty Act, LSA-R.S. 9:3141, et seq.
Under the New Home Warranty Act, a builder warrants a new home from certain defects. A builder is defined as “any person, corporation, partnership, .... or other entity which constructs a home, or addition thereto....” LSA-R.S. 9:3143(1). The New Home Warranty Act provides the exclusive remedies, warranties and prescriptive periods as between builder and owner relative to home construction, and no other provisions of law relative to warranties and redhibitory vices shall apply. LSA-R.S. 9:3150.
A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. La. Civ.Code art. 2439. A construction contract is an agreement to undertake a building or a work for a certain stipulated price. La. Civ.Code art. 2756. Where a contract involves both obligations to do and to give, generally one of the obligations must be designated as fundamental and the rules thereunder will control. Conmaco, Inc. v. Southern Ocean Corporation, 581 So.2d 365, 369 (La.App. 4 Cir.1991), citing 7 S. Litvinoff, La. Civil Law Treatise: Obligations Book 2, Section 158 at page 291. “The mere fact that an obligor may be involved in the installation and delivery of *299 the equipment will not change the characterization of the obligation from that of a sales contract, and therefore the rules governing sale will control.” Id. at 370.
The document executed by Linda and Michael Garner and Travis Knight of Rose is styled as a “Plain Language Purchase Agreement.” The accompanying Retail Installment Contract and Security Agreement references the Garners as | fi“Buyers” and Rose as “Seller.” A review of the evidence regarding the transaction between the Garners and Rose reveals that Rose did not agree to build a mobile home; it agreed to sell a mobile home. Southern Homes manufactured the home; the installation of the two pre-fabrieated halves of the mobile home by Rose constituted installation of the item sold. As such, the contract was a contract of sale, and Rose should be classified as a seller, not a builder. Accordingly, the laws of sale and, therefore, redhibition should be applied, rather than the provisions of the New Home Warranty Act. This assignment of error lacks merit.
In its final assignment of error, Rose avers that the trial court committed manifest error in finding that a redhibitory defect existed in the plaintiffs’ home, and that Rose knew of the defect prior to the sale, but neglected to tell the plaintiffs.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court posited a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Id. at 1127 (quoting Arceneaux v. Domingue, 365 So.2d at 1333 (La.1978)).
This test dictates that the appellate court must do more than simply review the record for some evidence that supports or controverts the trial court’s finding. Id. The appellate court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
^Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973, 976 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed *300 the evidence differently.’” Housley v. Cerise, 579 So.2d 973, 976 (La.1991), (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
Courts have recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Thus, |7where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
In the instant case, the trial court determined that the moisture intrusion and the separation in the marriage wall of the mobile home were the results of defects in the mobile home. The court further found that the continuing moisture problems in the mobile home and the separation of the mobile home roof made the use of the mobile home not only inconvenient, but also unsuitable for its intended use as plaintiffs’ home. The trial court rejected Rose’s contention that the moisture problem was due to improper installation, and concluded that the moisture problem was more likely than not due to the failure of the marriage wall to properly seal. After reviewing the evidence and testimony presented at trial, we find that there was ample support for the trial court’s conclusion that a redhibitory defect existed in the plaintiffs’ home.
In Griffin v. Coleman, 424 So.2d 1116 (La.App. 2 Cir.1982), the court found:
A defect is presumed to have existed before the sale if it manifests itself within three days immediately following the sale. LSA-C.C. art. 2530. Later appearing defects do not enjoy that status as a matter of law. However, our jurisprudence has provided that, in the absence of other explanations, later appearing defects may be inferred to have pre-existed the sale, when such defects do not usually result from ordinary use. [Citations omitted.]
The trial court correctly presumed that Rose, as seller of the mobile home, had knowledge of. the defects in the mobile home, as no competent evidence was offered to rebut this presumption. Besse v. Blossman, 521 So.2d 570, 574 (La.App. 1 Cir.1988); Rasmussen v. Cashio Concrete Corp., 484 So.2d 777, 779 (La.App. 1 Cir. 1986). As such, we find that this assignment of error is without merit.
| ¿CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.